J-A11008-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN STEVENSON WASHINGTON, SR. | : | |
| | : | No. 954 MDA 2025 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered June 30, 2025
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005224-2022

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: JULY 27, 2026**

Shawn Stevenson Washington, Sr. ("Washington") appeals from the judgment of sentence imposed following his convictions of possession with intent to deliver cocaine and possession of drug paraphernalia.[1]  Specifically, he challenges the decision of the Dauphin County Court of Common Pleas ("suppression court") to deny his motion to suppress.  Upon review, we affirm.

In March 2022, a confidential informant ("CI") informed Detective Dennis Simmons that a man who went by the name "Jazz" was selling drugs in the area.

On March 15, 2022, Detective Simmons arranged a controlled buy between the CI and "Jazz" on the 1200 block of Market Street in Harrisburg.

---

[1]  35 P.S. § 780-113(a)(30), (32).

The CI called "Jazz" and arranged to buy crack cocaine. During the sale, Detective Simmons observed the suspect arrive on the scene, enter the CI's vehicle, stay for a few moments, and exit the vehicle. Thereafter, Detective Simmons recovered a small quantity of crack cocaine from the CI.

Three days later, the CI placed another phone call to "Jazz" at the same phone number to purchase crack cocaine. The CI and "Jazz" agreed to meet on the 1200 block of Bailey Street in Harrisburg. Detective Jason Paul observed "Jazz" arrive in the area in a grey Buick LeSabre and enter the front door of 1220 Bailey Street. A few minutes later, he exited the residence, returned to his vehicle, then drove to the designated location for the controlled buy. Following the sale, Detective Simmons again recovered a small quantity of crack cocaine from the CI.

Detective Rian Bell captured photographs of "Jazz" entering and exiting his Buick LeSabre before meeting with the CI, and determined the vehicle was registered to Washington. Utilizing a PennDOT photograph of Washington, Detective Simmons then identified "Jazz" as Washington.

On March 21, 2022, Detective Bell applied for a search warrant to conduct a search of Washington's residence, persons inside, and the grey Buick LeSabre. A judge approved the warrant, and two days later, the police executed the search warrant on Washington's residence and vehicle. During the search, the police recovered marijuana, twenty grams of crack cocaine, drug paraphernalia, THC gummies, and cash.

The police arrested Washington, and the Commonwealth charged him with three counts each of possession with intent to deliver controlled substances and possession of drug paraphernalia. Washington filed a motion to suppress, contesting the probable cause used to justify the warrant to search his home or his car. Specifically, Washington argued that the affidavit of probable cause failed to establish a substantial nexus linking the drug sales to 1220 Bailey Street or the Buick LeSabre. The suppression court denied Washington's motion.

The case proceeded to a jury trial, after which the jury found him guilty of one count each of possession with intent to deliver cocaine and possession of drug paraphernalia. The trial court sentenced Washington to one to two years of incarceration for his possession with intent to deliver cocaine conviction and a consecutive term of one year of probation for drug paraphernalia conviction. Washington timely appealed.

He raises the following issue on appeal:

> Did the suppression court err in determining that observed drug transactions from [] Washington leaving his home and entering his car, arriving and facilitating drug transactions from his car and in the confidential informant's car, provide a substantial nexus between the sales and his home?

Washington's Brief at 4.

Washington argues that the affidavit of probable cause did not provide a substantial nexus between the criminal activity and Washington's residence. *Id.* at 12. He asserts that the "facts do not provide the link between the drug

sales outside of the home with possessing drugs in the home." *Id.* Washington claims that the totality of the circumstances support an inference that the vehicle was involved in the drug sales, not the home. *Id.* at 14. To that end, he highlights that his home was only involved in one transaction, and it was "for a momentary and minor deviation from [] Washington driving his car." *Id.* at 21; *see also id.* at 23, 25. According to Washington, his visit to his home "is tangential to the potential drug sales." *Id.* at 21. He contends that there was no evidence of criminal wrongdoing in the home. *Id.* at 25.

We review this claim according to the following standard:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Fletcher*, 307 A.3d 742, 745-46 (Pa. Super. 2023) (citation and brackets omitted).

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. If a person has a reasonable expectation of privacy in a place, then these constitutional provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate. Warrantless searches are

presumptively unreasonable under the state and federal constitutions.

Probable cause is a practical, non-technical concept. To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the totality-of-the-circumstances test. Pursuant to that test, when presented with an application for a warrant, a magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Boyd*, 296 A.3d 1270, 1274-75 (Pa. Super. 2023) (cleaned up). "[F]or a search warrant to be constitutionally valid, the issuing authority must decide that probable cause exists at the time of its issuance, and make this determination on facts described within the four corners of the supporting affidavit, and closely related in time to the date of issuance of the warrant." *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (citation omitted).

"A court reviewing the issuing authority's determination of probable cause examines only whether a substantial basis exists for the issuing authority's finding of probable cause." *Commonwealth v. Pacheco*, 263 A.3d 626, 646 (Pa. 2021). The "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review, as an issuing authority's probable cause determination is entitled to deference." *Id.* (citation and quotation marks omitted). Further, "search warrants must be read in a common sense fashion and should not be invalidated by

- 5 -

hypertechnical interpretations." ***Commonwealth v. Young***, 287 A.3d 907, 920 (Pa. Super. 2022) (citation and quotation marks omitted).

Probable cause that a person has committed a drug crime on the street does not automatically give rise to probable cause to search that person's home. ***Commonwealth v. Way***, 492 A.2d 1151, 1154 (Pa. Super. 1985). "The affidavit of probable cause must establish a 'substantial nexus' between the suspect's home and criminal activity or contraband sought to permit the search of the home." ***Commonwealth v. Mendoza***, 287 A.3d 457, 463 (Pa. Super. 2022).

The affidavit of probable cause submitted to the issuing authority in support of a search warrant for Washington's home states, in relevant part:

> On a day during the week of 3-15-22, I began an investigation into the sale of crack cocaine by a male known as "Jazz[."] "Jazz" was to utilize phone number (717)-612-**** when facilitating drug transactions.

> On said day, I was in plainclothes and operating an unmarked vehicle … At around 1500 hours, I met with a [CI] in a secure location. Said [CI] and the [CI] vehicle were searched for drugs, money, weapons and contraband and none were found.

> At that time, the [CI] placed a phone call to ["Jazz's" phone] number and spoke with a male voice. After a conversation, it was determined that the male wished to meet the [CI] in the 1200 block of Market Street to sell the [CI] an amount of crack cocaine. I then provided the [CI] with an amount of Dauphin County Funds. I then advised surveillance units, who drove to the area.

> I then followed the [CI] vehicle as it drove to the 1200 block of Market Street and maintained surveillance in the area. The [CI] did meet with an unknown [male], who did enter the front passenger seat of the [CI] vehicle. The vehicle then did drive west on Market Street before parking in the 1100 block. After a few

seconds, the male exited the vehicle and walked north, ascending a series of steps that lead to the 1200 block of Bailey Street.

I then met with the [CI] in a secure location, where the [CI] then handed me a small baggie containing suspected crack cocaine. Said [CI] and the [CI] vehicle were searched for drugs, money, weapons and contraband and none were found. Photographs of the male identified as "Jazz" were captured by Trooper Hook of the Dauphin County Drug Task Force (DCDTF).

On a date within the last 72 hours, I again met with said [CI] in a secure location. Said [CI] and the [CI] vehicle were searched for drugs, money, weapons and contraband and none were found.

During that date, said [CI] placed a phone call to "Jazz" at (717)-612-****. After a conversation, it was determined that "Jazz" wished to meet the [CI] in the 1200 block of Bailey Street to sell the [CI] an amount of crack cocaine. I advised surveillance units, then provided the [CI] with an amount of recorded Dauphin County Funds.

I then did follow the [CI] vehicle to the 1200 block of Bailey Street, where the [CI] vehicle parked. Detectives [in] the area did maintain visual surveillance of said vehicle at that time.

A few minutes later a [male] drove to the area …. Said male did park in the 1200 block of Bailey Street, before exiting said vehicle and entering the front door of 1220 Bailey Street. After a few minutes, the male exited the residence, entered the vehicle, then drove west. The male then parked the vehicle behind the [CI] vehicle, exited, then walked up [to] the [CI] vehicle and entered the vehicle's front passenger seat. After a few seconds, he exited the [CI] vehicle, then returned to his vehicle and left the area.

I then followed the [CI] vehicle to a secure location, where the [CI] handed me a small baggie containing suspected crack cocaine. Said [CI] and the [CI] vehicle were searched for drugs, money, weapons and contraband and none were found. Detective Bell of the DCDTF did capture photographs of said male entering and exiting his vehicle in the area before meeting with the [CI]. Detective Paul did observe Washington exit and enter the front door of 1220 Bailey Street.

The vehicle is registered to [Washington]. Utilizing a PennDOT photograph of Washington, I was able to identify him as "Jazz" from the photographs captured during both drug transactions with the [CI]. Washington did advise the [CI] that he does live at 1220 Bailey Street. Within the last 2 months, Harrisburg Police did respond to 1220 Bailey Street for a domestic incident, and officers did meet with Washington. He did identify himself as a resident of the address.

Affidavit of Probable Cause, 3/21/2022, at 3-4.

The suppression court found that the entirety of the affidavit of probable cause provides sufficient facts to establish that Washington committed the crimes and that evidence of such crimes could be found at 1220 Bailey Street and the Buick LeSabre. *See* Suppression Court Order and Opinion, 12/22/23, at 5. The suppression court explained that regardless of the fact that Detective Simmons did not personally observe the second controlled buy, he did observe the entire first buy, the crack cocaine that was sold at both sales, and that Washington conducted the first sale. *Id.* The court noted that Detective Simmons discovered that Washington was the owner of the Buick LeSabre used to transport "Jazz" to the controlled purchases and identified Washington as "Jazz" through the vehicle registration photograph and the photographs taken during the transactions. *Id.* Further, police identified no other suspects or locations, and both Detective Simmons and other detectives identified Washington as the seller. *Id.* The suppression court ultimately held that the totality of the circumstances described within the four corners of the affidavit of probable cause presented a substantial nexus between

Washington's drug activity and 1220 Bailey Street because Detective Simmons identified Washington as "Jazz" and Washington was observed leaving his home at 1220 Bailey Street and travelling directly to the location of the second controlled purchase. ***Id.***

The suppression court's findings are supported by the record. The facts described within the four corners of the affidavit of probable cause detail the timeline of events regarding the sale of drugs. It identifies the observation by police of Washington selling the CI drugs on March 15, 2022. Immediately before the second controlled buy, police observed Washington enter his residence at 1220 Bailey Street, exit to his Buick LeSabre, and drive directly, without stopping, to the second drug transaction prearranged with the CI, and sell drugs. These facts establish a substantial nexus between Washington's home and his drug activity. ***See Commonwealth v. Kemp***, 195 A.3d 269, 275 (Pa. Super. 2018) (concluding that the affidavit of probable cause established a nexus between appellant's home and the drug transactions where the police twice observed appellant leave his home and proceed directly to the controlled buy site); ***see also Commonwealth v. Clark***, 28 A.3d 1284, 1292 (Pa. 2011) (holding that probable cause existed to support search warrant of defendant's home where CI indicated drugs were being sold from the residence and the police had observed the defendant leave his residence, go directly to the prearranged controlled purchase location, and then return directly to his residence).

We reject Washington's argument that this case is analogous to *Commonwealth v. Kline*, 335 A.2d 361 (Pa. Super. 1975), and *Commonwealth v. Nicholson*, 262 A.3d 1276 (Pa. 2011). In *Kline*, the defendant was not observed exiting or entering his residence before or after completing a drug transaction. *Kline*, 335 A.2d at 364. In *Nicholson*, the defendant made two stops after exiting his residence but before arriving at the controlled purchase location. *Nicholson*, 262 A.3d at 1279. In this case, Washington entered his home after arranging to sell the CI drugs and then immediately drove to the controlled purchase location, where he sold drugs to the CI.

As the four corners of the affidavit of probable cause set forth a substantial nexus between Washington's residence and his drug sales, we conclude the suppression court did not err in finding that probable cause existed to search Washington's residence. *See Mendoza*, 287 A.3d at 467 ("Since the affidavit of probable cause set forth a 'substantial nexus' between [defendant's] residence and criminal activities or contraband, we conclude the magisterial district justice had a 'substantial basis' for concluding that probable cause existed to search [defendant's] residence").

Judgment of sentence affirmed.

J-A11008-26

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/27/2026

- 11 -